UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

FREDERICK JONES,

        Plaintiff,

        -against-

**MEMORANDUM & ORDER**

09-CV-2104 (RJD)(LB)

NYC DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT;
ALLEN AFFORDABLE HDFC,

        Defendants.
----------------------------------------X

DEARIE, Chief Judge:

Before me are the motions of defendants NYC Department of Housing, Preservation and Development and Allen Affordable HDFC, who seek dismissal of the complaint pursuant to Rules 12 (b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because the allegations do not allege a plausible theory of relief under the federal statutes they invoke, the motions are granted and the complaint is dismissed.

## DISCUSSION

As the Supreme Court made clear last year, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, ___, 129 S. Ct. 1937, 1950 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. This plausibility standard, the Supreme Court has explained, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id., 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id. (quoting Twombly, 550 U.S. at 556). Simply stated, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. As recently encapsulated by the Second Circuit, "[u]nder Iqbal, factual allegations must be sufficient to support necessary legal conclusions." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. July 8, 2010) (internal citations omitted).

Although Iqbal authorizes a court to "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," id., 129 S. Ct. at 1950, such mere conclusoriness is not what is deficient about plaintiff's complaint. To the contrary, for a document of its spareness and brevity, it pleads a considerable amount of factual particulars and accordingly warrants the presumption of veracity for purposes of the Rule 12 motion attacking it. The problem, as I shall explain, is that the allegations do not "support [the] necessary legal conclusions." Ruston, 610 F.3d at 59.

The allegations concern a series of misfortunes that have befallen the residents of one or both of the buildings located at 89-06 138th Street and 107-05 Sutphin Boulevard in Jamaica,

Queens, considered to be a single "premise" on a shared deed. Cmpt. ¶ 5. Both properties are being administered under the Neighborhood Redevelopment Program, "[w]hich is federally funded" and "subject to Community Development Block Grants." Cmpt. ¶ 6. The residents of the building on 138th Street include "African-American, Latinos and [sic] European descent," and "seniors, disabled, and children." Cmpt. ¶¶ 7,8. Defendants displaced both a 90-year-old "resident of European descent" from her home and "the resident of latino origin" from his home without furnishing them "supportive services." Cmpt. ¶¶ 9, 10. One of the defendants placed a pair of tenants in the 138th Street building in violation of "the tenant selection process." The municipal defendant also terminated the employment of one Derrick Roberson "as building superintendent" and thereby "caused [Roberson] economic injury." Cmpt. ¶ 13. Additionally, defendants have ignored a collapsing roof at the Sutphin Boulevard building, and have "failed to inspect and enforce" housing maintenance violations at both properties. Cmpt. ¶¶ 15, 16.

With respect to himself, plaintiff alleges only that he resides in one of the buildings, that he is a disabled military veteran of African-American descent and that on an unspecified date he was terminated from his employment as building superintendent. Cmpt. ¶¶ 2-4, 12.

The pleading alleges two legal conclusions. The first is that "[d]efendants [sic] conduct is discriminatory with respect to the following: [d]isparate racial impact, disability, deprivation of federally funded benefits, failure to enforce [ ] the housing maintenance codes." Cmpt. ¶ 1. The other is that all of the foregoing states claims for relief under the Fair Housing Act and Title VI of the Civil Rights Act.

Despite the assorted factual particulars of his complaint, plaintiff does not advance a tenable claim for relief under either the Fair Housing Act or Title VI of the Civil Rights Act. To

3

begin with, the bulk of the allegations describe injuries suffered by persons other than plaintiff himself, and plaintiff is neither an attorney nor otherwise a legally authorized representative of any of the persons whose injuries he describes. Even ascribing to plaintiff only the noblest of motives, concern for one's neighbors does not bestow upon an individual the legal standing to file lawsuits on their behalf in federal court. See generally Singleton v. Wulff, 428 U.S. 106, 112 (1976) (Article III of the United States Constitution requires that plaintiffs "allege an 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suits to make it a case or controversy subject to a federal court's Art[icle] III jurisdiction and, whether, as a prudential matter, the [plaintiffs] are proper proponents of the particular legal rights on which they base their suit').

I also conclude that the alternative course—denying the motions to dismiss and granting plaintiff leave to amend (perhaps by including additional allegations concerning injury to himself)—would be futile because plaintiff has already been offered this possibility. At an initial conference Magistrate Lois Bloom explained to plaintiff the glaring standing problem manifest in his complaint and afforded him time to amend, but when the period offered to him had expired, plaintiff stated on the record that he did not intend to file an amended pleading. See Dkt. 17, 19.

Although plaintiff would of course have standing to seek redress for the termination of *his* employment as building superintendent, that fact alone is not enough to save the particular complaint before me. First, the "judicial experience" and "common sense" that Iqbal authorizes me to consult compel me to conclude that this is housing case, not an employment discrimination case, and that plaintiff did not inadvertently mis-style an employment claim as one sounding in

housing law. Accordingly, I cannot re-construe the allegations as seeking to assert a claim of employment discrimination under Title VII of the Civil Rights Act of 1964.[1]

Second, and in any event, even if I were to so construe plaintiff's claim, I would nevertheless be compelled to dismiss this complaint because it does not convey a consistent (and therefore a plausible) theory of discrimination. Plaintiff alleges that he is a member of several protected classes, but the complaint does not identify the race, military or disability status of Derrick Roberson (the other individual terminated from the position of building superintendent), nor does it allege the race (or other relevant information) about any individual hired to fill that position. Continuing further with the untenable assumption that plaintiff's claim could be read as one for employment discrimination, and further assuming that plaintiff sought to cast his termination as part of the implied "pattern" of alleged "[d]isparate racial" treatment of the buildings' residents, *the other incidents* that the complaint alleges preclude the inference of discriminatory intent necessary for a prima face case because they involve misconduct committed against a wide range of categories of persons, including a "resident of latino origin" and a resident "of European de[s]cent" who is also of a greatly advanced age.

Third, having eliminated the possibility that the complaint could survive on a dormant, insufficiently pleaded theory of employment discrimination, I ask whether the termination of plaintiff as building superintendent might be actionable under the Fair Housing Act or Title VI of the Civil Rights Act and readily conclude that it cannot. The most broadly worded of the Fair Housing Act's provisions prohibits "discrimination against any person in the terms, conditions,

---

[1] Additionally, the complaint makes no reference to the charges plaintiff would have had to file with an appropriate administrative agency before having a right to file a Title VII suit here.

or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religions, sex, familial statutes, or national origin." 42 U.S.C. A. §3604(b). Even if the statutory terms "conditions" or "services" could be construed to include some of the duties performed for a dwelling's residents by its superintendent, the most that plaintiff has is some larval idea that is many, many steps removed from alleging that *he,* as the terminated superintendent, suffered a Fair Housing Act injury, or from stating a plausible cause of action under the Fair Housing Act by persons who might have an actionable interest in the identity of their dwelling's superintendent. Moreover, even assuming there were a *housing* injury, we return to the same deficiency I discussed in the context of plaintiff's hypothetical employment discrimination claim: the allegations do not permit a consistent (and therefore plausible) inference of discriminatory animus because the alleged victims fall into several different categories.

In short, the need to engage in these speculations in order to find a way for plaintiff to survive is precisely what signals to me that he cannot, and that his complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (internal citation omitted).[2]

Because plaintiff has failed to allege a cognizable federal claim, I decline, at this very early stage of the litigation, to exercise supplemental jurisdiction over his state law claims.

---

[2] Because the complaint as a whole does not support a claim that plaintiff was discriminated against on the basis of his race or other status, his purported claim under Title VI of the Civil Rights Act does not require separate treatment. Although more broadly worded than the Fair Housing Act, Title VI requires that a plaintiff show that, with respect to the benefits of a federally funded program, he was discriminated against "on the ground of race, color, or national origin." 21 U.S.C.A. §2000d. See Commodari v. Long Island University, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000) (reciting elements of Title VI claim).

## CONCLUSION

For all of the foregoing reasons, defendants' motions to dismiss are granted and the complaint is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2010

                                    RAYMOND DEARIE
                                    United States District Judge